UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| Cody Smithers, et al., | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | Civ. No. CC-06-133 |
| | § | |
| City of Corpus Christi, | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION

This is a suit by home-owner, Cody Smithers, against the City of Corpus Christi, Texas, about restrictions the city is imposing under the authority of its zoning ordinance. The house at 326 Meldo Park is within a zoning district limited to one-family dwellings. Smithers believes that certain provisions of federal law apply to his use of his home and preempt the city's authority to enforce its zoning ordinance against him. By his suit he asks the court to enjoin the city from enforcing its ordinances.

Specifically, Smithers believes that the Fair Housing Act, 42 U.S.C. §3604(f)(1), which prohibits discrimination against the disabled, protects him from the city's intrusion on his sponsorship and operation of a recovery home for twenty recovering alcoholics and substance abusers. He has named his home "Safe Place." In addition to this federal statute, Smithers refers the Court to numerous decisions of federal courts that require municipalities to reasonably accommodate their zoning decisions on behalf of the disabled, including recovering substance

abusers. *Edmonds v Oxford House Inc.*, 115 S.Ct. 1776 (1995); *Elderhaven v Lubbock*, 98 F.3d 175 (5th Cir. 1976); *Groome Resources Ltd. v. Jefferson Parish*, 234 F.3d 192 (5th Cir. 2000). Municipalities such as Corpus Christi can be liable for discrimination if they refuse to make reasonable accommodations for the disabled. *Groome*, 234 F.3d 192, 200.

The City of Corpus Christi does not challenge Smithers' assertion Safe Place residents are recovering addicts who are by law "disabled" and are protected from discrimination in housing by the Fair Housing Act. Nor does the City take issue with the application of the "reasonable accommodations" provisions of the Fair Housing Act to the City zoning ordinances.

The only real dispute between the parties is what "reasonable accommodations" means when applied to Safe Place on Meldo Park. Clear Fifth Circuit law assigns Smithers the obligation to prove that the City of Corpus Christi has failed to reasonably accommodate him and Safe Place in its regulation of housing. *Elderhaven*, 98 F.3d at 178. The evidence that plaintiff offered at trial falls short of its legal task and the Court's verdict must, therefore, be in favor of the City.

Cody Smithers, the owner of Safe Place, is a recovering substance abuser. He purchased the house at 326 Meldo Park in February of 2006. The house is 4,216 square feet, including convertible garage space. Safe Place houses individuals in recovery from drug and alcohol addiction. At the time of the trial, eighteen people, ranging in age from twenty-eight to fifty-six years, lived in the

Safe Place house. Safe Place has significant turnover in membership. Only seven members have lived in the house continuously since February 2006. Sixteen residents of Safe Place pay $340/month or $90/week for their housing and food. Smithers and his house manager Jeff Ozbirn do not pay rent. Smithers' equity share in the home increases with monthly payments on his mortgage, funded at least in part by residents' contributions.

Safe Place functions as a bridge between clinical treatment and independent life. Residents of Safe Place share in cooking and household chores. Most residents also have outside jobs. Safe Place's congregate living structure provides support, teaches relevant life skills, and encourages abstinence from substance abuse. Safe Place conducts random drug tests and expels any member found to be using drugs or alcohol. Smithers and Ozbirn testified that a traditional neighborhood environment aids recovery from drug and alcohol addictions.

Safe Place does not permit residents with convictions for drug manufacturing or sex crimes against children. Since February 2006, there have been no reports of criminal activity occurring in or around 326 Meldo Park, or otherwise associated with Safe Place. Neighbors of Safe Place testified that foot and vehicular traffic have increased in the neighborhood and that parked cars obstruct the alley behind Safe Place.

Safe Place is located in an R-1B zoning district, known as a "one-family-dwelling zoning district." The City's zoning ordinance defines family as "[a] person or persons, occupying a dwelling, living together and maintaining a

common household, which may include up to four (4) boarders or roomers if each has a rental contract to occupy the dwelling for at least thirty (30) consecutive days." Corpus Christi, Texas, Zoning Ordinance 3-1.24 (21st ed. March 2005).[1]

On February 22, 2006, the City informed plaintiff that it found Safe Place in violation of the one-family-dwelling restriction. *Id.* at 4-4.01. The City conducted an inspection of Safe Place and determined that it qualified as a boarding house within the zoning ordinance. The zoning ordinance defines a boarding house as "a building other than a hotel or apartment hotel where, for compensation and by pre-arrangement for definite periods, meals or lodging and meals are provided for five (5) or more persons, but not exceeding twenty (20) persons." *Id.* at 3-1.07. Considering the transient living arrangements of many of the Safe Place residents, the Court finds that the City was reasonable in its determination. The City began enforcement procedures, seeking steep, daily fines. Smithers requested an accommodation from the City, which responded that Safe Place would be permitted to operate with six residents. Instead of negotiating with the city or even requesting further hearings, Smithers took the "take it or leave it" approach of filing suit for the accommodation of twenty people.

In order to prove a violation of the Fair Housing Act, plaintiffs must prove that the requested accommodation is "necessary to afford [handicapped] person[s] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). This element limits the accommodation duty so that not every rule that inconveniences

---

[1] Ironically, the so-called "one-family-dwelling" restriction fails to restrict dwellings to single families in the traditional sense of those related by blood, marriage or adoption.

the disabled must be changed. The statute requires only accommodations necessary to ameliorate the effect of plaintiffs' disability so that they may compete equally with the non-disabled in the housing market. *Bryant Woods Inn, Inc. v. Howard County*, 124 F.3d 597, 603-04 (4th Cir.1997) ("[I]f the proposed accommodation provides no direct amelioration of a disability's effect, it cannot be said to be 'necessary.'").

Evidence at trial showed that the average occupancy of a single-family dwelling in Corpus Christi is 3.27 people, while plaintiffs seek to house twenty people in a single house. On the record of this case, considering the unopposed testimony of Smithers, the Court does not deny that group living has therapeutic value. Smithers failed to produce any evidence that a group of eighteen to twenty people in a single home constitutes a critical mass for effective recovery from addiction. In fact, plaintiffs acknowledged that Safe Place previously included fewer residents in a smaller house. The Court further notes that the transience of most of Safe Place's residents further undermines the concept of the entire group as a cohesive therapeutic family. In short, plaintiffs failed to carry their burden of proving that the accommodation of this number of recovering addicts was necessary to make Safe Place therapeutically viable.

The Court is also mindful that "the economics of group living arrangement[s] often require a critical mass of residents in order to make feasible the type of alternative living arrangement that the Fair Housing Act was designed to encourage." *Elderhaven*, 98 F.3d at 179. However, plaintiff demonstrated only

that a large number of residents may be necessary to make the particularly large house at 326 Meldo Park economically feasible. Such a showing is insufficient under the FHA. *Hemisphere Bldg. Co., Inc. v. Vill. of Richton Park*, 171 F.3d 437, 440 (7th Cir.1999) (FHA bars discrimination against "handicapped people by reason of their handicap, rather than . . . by virtue of what they have in common with other people, such as a limited amount of money to spend on housing."). Plaintiffs did not prove that Safe Place could not be sustained by a smaller number of residents paying higher rent or that a smaller house with lower overhead would not be financially viable.

For the foregoing reasons, the Court concludes that Smithers has failed to prove that the City has discriminated against him, his residents and boarders, by refusing to grant a reasonable accommodation "necessary to afford [handicapped] person[s] equal opportunity to use and enjoy a dwelling" and required by the Fair Housing Act. 42 U.S.C. § 3604(f)(3)(B). The plaintiffs are not entitled to relief.

So ORDERED this 19th day of March, 2008.

*(signed)* Hayden Head
HAYDEN HEAD
CHIEF JUDGE